Good morning, ladies and gentlemen. Before we get to our usual business, we have a happy occasion of welcoming one of our law clerks to membership in the Bar. And since I am the movement, after I make the motion, I will hand over the symbolic, the hypothetical gavel to Judge Lynn, who will consider the motion. I'd like to move the admission of Jennifer Wu, who is a member of the Bar in good standing in the highest courts of New York and New Jersey. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. That's what I'm supposed to say. But I will say, in addition, that she has been my law clerk, and she's been outstanding, both as an individual and as a lawyer, and I'm very pleased to move her admission. She will be a fine lawyer. She's been a pleasure to work with, and so I hereby move her admission. The court will now confer. Can we step back in the other room for a minute? No dissent being expressed. I'm pleased to grant the motion, and we welcome you to the Bar, and we look forward to seeing you at the lectern in the near future. Thank you. Congratulations. Thank you. Nice to have you with us. Would you be ready to take the oath from our Chief Deputy Clerk, Ms. Clarkett? Congratulations, Jennifer. Congratulations. We now proceed to our scheduled work. We have six cases on the calendar this morning, encompassing the wide variety of subject matter we hear. We have two government employee cases, a patent case, a trade case from the Court of International Trade, a government contract case from the Board of Contract Appeals, a tax case from the Court of Federal Claims, and a SAP case plus one of the employee cases are submitted on the briefs and will not be argued. Our first case is a government employee case, Edwards v. Department of Justice 043433. Mr. Work. Thank you, Your Honor. My name is Kelly Work, and I am here on behalf of the petitioner, Keith Edwards. We're seeking to enforce a decision of the Merit System Protection Board issued August 8, 2000. In that decision, the Board found that Mr. Edwards did not knowingly consent to the loss of career, tenure, and appeal rights in accepting another appointment with the agency and was deemed, therefore, not to have accepted the new appointment and to have retained the appeal rights and career tenure associated with his former appointment. The Board issued an order to the agency directing the agency to cancel the removal action that had been done with respect to Mr. Edwards and to restore him to his position effective June 17, 1999. He agreed he had a term appointment, didn't he? Incorrect. That is incorrect, sir. He did not agree that he had a term appointment. In fact, the Board specifically found at, this is at Exhibit C, at paragraph 10, that the appellant did not knowingly consent to the loss of his career, tenure, and appeal rights in accepting the INS position. In order to accept a term position, he would have had to give up his career condition. Can we ask an oral argument to listen to the questions so you can respond to the questions? Yes, Your Honor. We have a statement of understanding for term appointment. I, Keith Edwards, understand and accept the following conditions of my term appointment. He has a signature there. Why is that not an indication, a strong indication, that he knew he had a term appointment? Well, the Board addressed that issue. The agency and the administrative judge continued to rely on that statement of understanding. But that issue was ruled on and rejected by the Board in its decision, and that language appears at paragraph 9 of their decision. The Board states, that statement cannot constitute notice of the appellant's change of tenure for purposes of consenting to the loss of his career, tenure, and appeal rights because it is undisputed that it was not read or signed by the appellant prior to his relinquishment of his BOP correctional officer position in acceptance of his INS position. But the standard of review here is that we review the determinations of the Board for substantial evidence, and there was a determination that substantial evidence supported the conclusion that this was a term appointment. And, I mean, for you to succeed here, you have to show us why substantial evidence doesn't support that conclusion. Well, both the case law and the determination by the Board, the administrative judge in his consideration of the issue is bound to follow the decision of the Merit System Protection Board. The Merit System Protection Board made a determination on that issue, and they determined that in order for Mr. Edwards to have accepted a term appointment, he would have had to consent to the loss of his career, tenure. That's what the Park case holds, that in order for an employee to change in a position from one with career tenure to one without career tenure, the agency has to have notice and knowledge, and there has to be a voluntary waiver of that right. But he's not seeking return to his position as a corrections officer. No, sir. He has a career tenure position. He's seeking return to his position as a term employee. That's right. He resigned his position as a Bureau of Prisons correctional officer in reliance on the offer from the agency for a promotion transfer. The agency now acknowledges that Mr. Edwards' entry onto duty was through the promotion transfer SF-52 document. When he entered onto duty in May 9, 1999, it was pursuant to that SF-52. But the SF-52 is just a request. I understand. But once Mr. Edwards enters onto duty, he acted in reliance on that offer and accepted it and entered onto duty. The agency then subsequently did what they now characterize. Initially, the agency, up until 2004, denied that they issued the SF-52. Then in 2004, they acknowledged they issued it for the first time. They characterized it as a correction that they did. They then did this corrective action with respect to Mr. Edwards' records. Mr. Edwards was not notified that there was a corrective action that was being done. And that is contrary to what the law requires as set forth under the Travolini case. Anytime there is a corrective action done where the agency is making a change that would require adverse action procedural rights, there has to be notice and due process given to the employee. That was not done in this case. Mr. Work, when you appeared before us, if my recollection is correct, three years ago on this same case, you said then that what you needed was an opportunity to appear before the board, before the AHA, and have a hearing because your client had not been given an actual hearing before the board at that time. And you said the problem was that there were all these conflicting documents in the record that nobody was sure what they meant. And we agreed with you. In fact, I think if I remember right, Judge Lynn and I were both on the panel at this time. There was a different third judge. And so we remanded it and gave you an opportunity for a hearing. You didn't want that hearing. What happened to that? The administrative judge so narrowly limited the scope of the issues in that case, basically limited it to a single issue, the issue being whether or not Mr. Edwards had accepted a term appointment. Since we had, in the interim, after we appeared here in 2003, there was additional discovery that was done. In that time, the agency admitted that they had not amended, revoked, or canceled the promotion transfer. In May of 2004, after they had made that admission, they changed that response. In their May 2004 admissions, at the close of the record, they state then that they made a correction. Actually, they did issue the SF-52. They made a correction to it. That correction effected a conversion of Mr. Edwards' position from career conditional to term. They actually changed the position number on his personnel records. He was in one position and was changed to another position. They explain all that in their depositions in the record now before us as clerical error, one thing or another. If they were to make that correction, and bear in mind that this is being done, that the generation of this SF-50 document that was ultimately placed in Mr. Edwards' file, it was generated after Mr. Edwards was terminated by the agency. So the litigation issue was in the air. But we had determined that with the issues, as they were so limited, and the discovery that had been assembled, that it was not necessary and that it would be futile, basically, for us to proceed to the administrative judge to get a hearing. That was confirmed, we believe, by the ruling that we got. Because the ruling that we got, the administrative judge, again, relies on the statement of understanding that had been rejected by the board in its August 8 decision. And that was the decision we were seeking to enforce. If you had to put your finger on one single thing that the board has done wrong that we need to correct as an error, what would it be? It would be the reliance on the SF-50 and the reliance on the statement of understanding, which were determined, we believe, to not have validity in the board's decision of August 8. The issue is, did Mr. Edwards consent to the loss of his career tenure? The board, in its August 8, 2000 decision, determined that he did not. In order for him to accept a term position with the agency, he would have had to have notice. He would have had to, in writing, voluntarily waive his career tenure and appeal rights. There is no document that the agency has produced other than that statement of understanding, which was signed by Mr. Edwards after he reported for duty under threat of termination. He was ordered to file that document or be terminated. The board determined then, in August of 2000, that that document was unreliable. But there was an announcement of the position that did clearly indicate that this was a term position, correct? Yes, sir. And your reliance application for that position referenced that announcement, did it not? We do not dispute that Mr. Edwards applied for a term position in September of 1998. And that evidence was considered by the board? When we get, pardon me? And that evidence was considered by the board? Yes, sir. And that was the only position that was available? No, sir. The agency did have other positions. And, in fact, Mr. Edwards, that was in September of 1998. When the discussion then about the position that was ultimately offered to Mr. Edwards, that occurred six months later. Now we're into 1999. We're into March of 1999. Mr. Edwards was offered the term position. He rejected it. He did not want to lose his career tenure. It was explained to him what that would mean if he accepted that position. They came back to him and advised him they would put him in a permanent position. The SF-52 was generated. Mr. Edwards was told there would need to be no break in service. He would need to resign his position from the Bureau of Prisons. That's what he did. He moved to Miami, recorded for duty, and then the problems began a short time after that. But we understand and we don't dispute that Mr. Edwards did apply for a position that was a term position. It was offered. He rejected it. The agency came back and offered him a permanent position. There is nothing in the record that the agency can produce that would demonstrate that Mr. Edwards consented to give up his career tenure. He did not do so. What in the record supports your contention that he was offered a permanent position? There is the affidavit of, well, there actually are two affidavits of Mr. Edwards that are in our appendix. One that was submitted at the close of the record, which is at tab E, pages 35 to 38, and then the earlier affidavit is at tab Z, pages 111 through 121. And those are supported then by the SF-52, which references promotion transfer. It uses all the appropriate codes. Whose affidavits are those? Those are Mr. Edwards' affidavits. Oh, Mr. Edwards' affidavits. Yes. Is there any other than self-serving declarations that would be responsive to Judge Lynn's question? We had discussion about this in 2003, but there is the letter of termination that was issued by the agency. That appears at tab K of the petitioner's appendix. References, on May 9, 1999, you received a career conditional appointment as a district adjudications officer with the service. Now, in an affidavit that was submitted at the time of the record, they claim, well, that was an error. But it is consistent with Mr. Edwards' testimony. It's consistent with the documents that are in the record. There is the document that would be required for Mr. Edwards to have given up his career tenure is absent from the record. Mr. Worth, you're mostly through your rebuttal time. You can use it. Continue to use it. I'll stop now. Thank you. Ms. Moore. May it please the Court, we respectfully request that the Court affirm the decisions of the MSPB. The Board correctly determined that Mr. Edwards was appointed to a term position. How do you answer the issues that he's been addressing to us? Your Honor, the critical issue is whether he accepted a term appointment as the Board held. This is the first time that Mr. Edwards has challenged the issue as defined by the Board on remand. And that issue is certainly consistent with this Court's remand decision in 2003. And the totality of the circumstances suggests strongly, as the Board held, that Mr. Edwards was aware that he was accepting a term position. He applied for the term position. The position announcement said in two different places on the cover page that it was a term position not to exceed 13 months. He applied for it. He mentioned that announcement number on his application, specifically the same exact announcement number. His name was on a list of eligibles that the Deputy Director relied on in choosing him to be offered the position. Speak up, please. Speak up, please, Ms. Moore. Oh, thank you, Your Honor. I will speak up. There's no indication that he didn't accept or apply for the term position, which is a subject matter of this dispute. Well, Mr. Work argues that maybe the vacancy announcement was for a term position and maybe that's what he initially applied for, but there were subsequent conversations and it was a different position that he accepted, a permanent position. How do you address that? Mr. Edwards states that although he applied for this term position, that he didn't really want a term position, and he asserts through his declaration that there were phone calls that were made between him and an INS official that's unnamed as of this date, and there's no date upon which that conversation allegedly was held, but he was told that he could instead have a career conditional appointment. There's no vacancy announcement that would evidence such a career conditional appointment. There's no letter by anybody at the INS to support that statement. Mr. Edwards himself has no documentation of that statement other than his self-serving declaration once the case is in litigation. Moreover, the agency cannot just change an appointment or an announcement from a term to a career conditional appointment. There's no authority for that. And there are three declarations in the record that the government submitted to the board that explain that. It is not within the authority of an agency individual to simply change the nature of an appointment. So that argument does not succeed. Moreover, Mr. Edwards, less than two weeks after he began working on May 9, 1999, signed the Statement of Understanding. It was within a short time period of him beginning work in that position. And that Statement of Understanding, which is in the record, he acknowledged that he was accepting a term position with limited rights. But he argues that he did it under duress. But he still signed it. If he was under so much duress and really did not want to sign it, he did not have to. Well, he didn't have to if he wanted to lose the appointment, according to Mr. Edwards. If he wanted to lose the term appointment. If it's true that he actually acted under duress, wouldn't that vitiate the signature? Your Honor, that was not an issue brought up below before the board. And certainly, Mr. Edwards was given the choice of having a hearing. And that issue was not addressed by the board. And so he signed the statement. And he even crossed out certain things at the end of the statement. So, yes, he did have a voice in signing that statement. And if he didn't want a term position, which is what the statement was all about, and he didn't have to sign it. He could have said, no, I'm going to hold out for a career conditional appointment down the road or I'm going back to my former position at BOP. He had alternatives. Yet he signed the statement less than two weeks after beginning work. So certainly, the totality of the circumstances, which is what this court looks at, suggests that there is substantial evidence to show that Mr. Edwards accepted a term position. Is it customary for the DOJ divisions to get such a signed statement two weeks after an employee joins? Your Honor, I believe by law that Mr. Edwards should have been notified before leaving the BOP in his career conditional appointment that if he did leave and accept a term position, that his probationary rights and appeal rights would be limited. And that didn't happen. And that is the error in this case. But that error was corrected by reinstating him to his term position, giving him back pay for the full amount of that term position. And then it expired naturally on June 8 of 2000. Well, I don't see how putting him in the position that he said he didn't want would correct the error of not having told him in advance that if he took that position, it was a term appointment. I'm puzzled as to how that corrected the failure of the government to have told him before he left the Bureau of Prisons that he was about to jump off a cliff. I mean, it's hardly a good answer to say to somebody who's jumped off a cliff that, well, we'll let you go back up and do it again. Well, two things, Your Honor. The error that attached to that was the loss of his procedural appeal rights and procedural notice, 30-day notice before a termination of your employment. Granted, he didn't receive that. However, two things. One, he did sign the Memorandum of Understanding that accepted the term appointment and the limited appeal rights down the road. And that was before he was terminated on June 8, or before his proposed termination date. That was found an error. So it wasn't as if he was terminated before he ever knew that he had limited appeal rights. He was terminated after he signed that Statement of Understanding, accepting his limited appeal rights. So to the extent there was error, the Board was conservative in having the government give him back pay and reinstatement to his position. Are you arguing that he did not knowingly consent to the loss of his appeal rights, but he did knowingly consent to the loss of his career tenure? At the time he began working as a district adjudication officer, May 9, the Board found in its 2000 decision that he was not aware that he was giving up his career conditional procedural appeal rights. However, the Board held that... Why is that not law of the case? It is, and that's why the Board held that because the removal was improper and that it didn't give him something that a career conditional person would have gotten, which is 30 days notice before a removal. He didn't get that. Well, that's the appeal right, but what about the career tenure? The career tenure cannot simply attach to any given position. Again, as the declarations explained, career tenure has to be part and parcel of a vacancy announcement or a position, part of a definition of an open position. And here it wasn't. So, yes, he did lose his procedural appeal rights or procedural notice before termination, and that's why the Board held that the removal was improper and that he must be reinstated to his position that he had accepted. So he received the benefit of the bargain in the sense that he got the full-term salary that he would have received. But wasn't the effect of the Board's 2000 decision to, in effect, nullify his appointment to the term position and to indicate that he should be reinstated to his career tenure position as a corrections officer? It was not to nullify his appointment to the term position. It was to nullify his removal from his term position and to reinstate him to the status quo. The status quo was where did he leave, where was he when he was improperly removed? That's the critical question. And the Board held he was in a term position. That went up on appeal to this Court. This Court held, looking at the documents, we can't tell what he had. So let's remand it to see what status quo he was in when he was improperly removed. But if he did not knowingly consent to the loss of his career tenure position, then isn't he entitled to retain that career tenure position or to be returned to that career tenure position? That's not the position with the INS. That's the position with the Bureau of Prisons. Yes, Your Honor, I know that. But he did consent on May 21st to the loss of his career conditional appointment. So he ultimately did consent to the loss of that position. It was within two weeks of beginning work on May 9th. Now, it wasn't when it perhaps should have been, which was before he left BOP, but he did consent to the loss of it. He applied for a vacancy announcement that evidenced in two places that it was a term position. He signed a statement of understanding. He began working in that position. Before we get too far lost in retrying this case, I take it the government's position is that given our limited standard of review, on the question of whether he relinquished his position knowingly and whether he knowingly took on a term appointment, I suppose your answer would be those are specific factual determinations which we can overturn only if there's no substantial evidence in the record to support them. Is that what the government's position would be? Your Honor, yes. This court has held that whether someone accepts a position or not is based upon the totality of the circumstances, which would be a question of fact in this case. Are there any legal issues in this case that we are free to determine without deference to the board? Your Honor, I don't believe so because Mr. Edwards did not challenge the issue as the board defined it, which is, did he accept a term position? So that issue is not up here on appeal. And the question is, do the totality of the circumstances support the board's finding that Mr. Edwards accepted a term position with the INS? That was the issue we sent back on remand, wasn't it? The court did not define it in so many words, but this court looked at the documents and said, these documents go this way, evidencing his maybe not accepting a term position. These other documents go the other way, evidencing that perhaps he did accept a term position. We don't understand the record. So in essence, that's how we read the court's remand decision is asking, what did he accept? And that's how the board interpreted it as well. OK. For these reasons, we respectfully request that the court affirm the decisions of the MSPB. Thank you, Ms. Moore. The work has little more than amended. We'll give you two minutes, and we'll hold you to it because we've got a very busy morning. The agency's position seeks to limit the August 8, 2000 decision to a finding that Mr. Edwards only gave up his adverse action procedural rights. The August 8, 2000 decision of the board, however, cannot be so limited. It was broader. The board specifically found that Mr. Edwards did not consent to the loss of his career tenure or his appeal rights. Therefore, he did not accept the new appointment with the agency and has to be restored to his former status, which is as a career conditional employee with career tenure. That's the clear language of the board's order at paragraph 10. With respect to the- Are you talking about the 2002 board order? This is the August 8, 2000 decision, the merit system protection order. No, I'm talking about the 2002 order on enforcement when the board said that the agency had enforced their earlier order by returning him to a term position. Am I mistaken about that? That's the decision that was vacated by this court in 2003. But that was the board's position at that time. That was the administrative judge's position, and there is an order of the board. I don't want to use up your rebuttal time. Go ahead. Use it the way you want. Let me just point out, with respect to this issue of the statement of understanding, Mr. Edwards did at Exhibit J contemporaneously object to that statement of understanding in a letter that he sent certified mail dated June 16, 1999. He states there, I signed under protest. This is on page 55. I signed under protest. He's referring to a supervisor came to him and explained that he must sign this or they will terminate me. I signed under protest, which is listed with the signature, and I signed that says memo forthcoming. He didn't consent. He did modify it in a couple of respects. So it wasn't a take it or leave it. He deleted a couple of paragraphs on the back side, as I see it. Those changes were made not by Mr. Edwards but by the agency because they were inapplicable to Mr. Edwards' situation. Mr. Edwards made no changes to the statement of understanding. Now, let me quickly. Very quickly. Let me quickly, just with respect to Exhibit I, which is the agency's explanation of how Mr. Edwards arrived onto duty, they do point out that Mr. Edwards, that the agency requested and got approval to fill a temporary district adjudication officer position referring to the SF-52. And that was a career conditional promotion transfer. Ms. Clark then made the correction. It would have been possible for the agency if, in fact, a mistake had occurred to correct that mistake and restore Mr. Edwards to his former position with the Bureau of Prisons. They did not do that. Instead, they processed a conversion to term, changed his job from career conditional to term. He didn't receive notice. He didn't have an opportunity to respond to that. He didn't consent to it. Thank you very much. Thank you, Mr. Edwards. Thank you for taking under advisement.